**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Greenbelt Division**

| | |
|---|---|
| BRIAN MILLER, ) | |
| ) | COMPLAINT |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| WESTLAKE SERVICES, LLC d/b/a ) | |
| WESTLAKE FINANCIAL SERVICES ) | |
| ) | |
| Defendant ) | |

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE MARYLAND CONSUMER DEBT COLLECTION ACT, MARYLAND CONSUMER PROTECTION ACT, TELEPHONE CONSUMER PROTECTION ACT, MARYLAND TELEPHONE CONSUMER PROTECTION ACT, AND INVASION OF PRIVACY**

INTRODUCTION

This action arises out of Defendant's repeated violations of the Maryland Consumer Protection Act (the "MCPA"), the Maryland Consumer Debt Collection Act (the "MCDCA"), The Telephone Consumer Protection Act (the "TCPA"), the Maryland Telephone Consumer Protection Act ("MTCPA"), and the tort of invasion of privacy, in its efforts to collect a consumer debt from Plaintiff.

JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 47 U.S.C. § 227, and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here

PARTIES

3. Plaintiff Brian Miller is a natural person who resides in the City of Gaithersburg, Montgomery County, State of Maryland.

4. Defendant Westlake Services, LLC d/b/a Westlake Financial Services is a subprime lender whose principal place of business is located at 4751 Wilshire Blvd, Suite 100, Los Angeles, CA 90010. Defendant is a debt collector pursuant to MCDCA 14-201(b) and a "person" as that term is defined by MCDCA 14-201(d).

## FACTUAL ALLEGATIONS

6. In 2008, William Conoway ("Conoway") purchased a BMW vehicle which was financed through Lendmark Financial. Plaintiff was the co-signer on this loan.

7. In or around November 2010, Conoway ceased payments on this vehicle.

8. In February 2010, Lendmark contacted Plaintiff and alerted him to Conoway's non-payment.

9. Plaintiff contacted Conoway and told him to catch those payments up or he would be taking that car.

10. On or about April 16, 2011, Conoway dropped off the BMW and Plaintiff saw his new vehicle, an Acura TSX, which was being driven by Conoway's friend.

11. Mr. Conoway informed Plaintiff that he had just bought this new vehicle, which Plaintiff later discovered was financed through a loan from Defendant.

12. This loan was therefore a financial obligation that was primarily for personal, family or household purposes and therefore a "consumer transaction" as that term is defined by Md. Comm. Law 14-201(c).

13. On or about September 23, 2011, Plaintiff received a blocked call from Defendant, to his cellular phone, stating that they were looking for Conoway.

14. Plaintiff said he didn't know where Conoway was and asked why they were calling him.

15. Defendant told him that Conoway had listed Plaintiff as one of the references on the loan application.

16. Plaintiff responded that Conoway had not told him about this reference and then asked if Conoway had missed a payment.

17. Defendant responded that Conoway had missed at least two payments.

18. Plaintiff retorted that he was not surprised given that Conoway had just done the same thing to him.

19. Plaintiff provided Defendant with Conoway's last known contact information including the cell phone and address.

20. Plaintiff explained that he had been involuntarily listed as a personal reference and requested that Defendant not contact him again.

21. About a month later, on October 14, 2011, Defendant called back again looking to speak to Conoway.

22. Plaintiff explained that he had already spoken to another representative of Defendant, that he did not consent to be listed as Conoway's reference, and that he had already provided Conoway's information.

23. This should have been the last time that Defendant called Plaintiff, but inexplicably the calls continued.

24. Plaintiff received at least 5 calls from Defendant in November 2011.

25. At 10:30pm on November 17, 2011, Plaintiff spoke to a female representative and told her that he was tired of Defendant's constant calls.

26. This representative told Plaintiff that "this is what happens when you associate with people who don't pay their bills".

27. A little over an hour later, at 11:48pm, Defendant again contacted Plaintiff about Conoway's debt.

28. Plaintiff and this representative argued about the basis for Defendant's call and in conclusion Plaintiff told this representative that he would be filing suit against Defendant.

29. Plaintiff received at least 11 calls from Defendant in January 2012.

30. Plaintiff received at least 3 calls from Defendant in February 2012.

31. This information was pulled from Plaintiff's telephone billing statement from AT&T, and there are calls by Defendant to Plaintiff that do not show up on these statements.

32. One such call was on February 24, 2012, where a representative named "Tracy" called from a blocked/unknown number and left a voicemail identifying herself as an employee of Defendant and told Plaintiff to call her back at 1-800-746-1904.

33. The frequency of these calls began to increase significantly as time went on, such that in the latter half of March, Plaintiff was receiving at least 5 or 6 calls a day.

34. On some of these calls, Defendant's representative would claim that if they did not hear back from Conoway, they would be going after Plaintiff to recover any deficiencies it incurred.

35. On March 12, 2012 Plaintiff was contacted from an unblocked number by a representative of Defendant named Aldo Herrera ("Herrera").

36. Plaintiff reiterated that he was not the person on the loan and once again provided Conoway's last known cell phone number.

37. Even after directly speaking with Herrera, Defendant called Plaintiff 5 more times within a 10 minute period.

38. On or about March 15, 2012, undersigned counsel contacted Herrera and inquired about why Defendant was continuing to contact the Plaintiff.

39. Herrera explained that must have been a problem with Defendant's call blaster/autodialer and that he would remedy this immediately.

40. On Friday March 19, 2012, Defendant once again attempted to contact Plaintiff, attempting to call him 4 times within a span of 2 minutes.

41. Ironically, one of these calls occurred while Plaintiff was on a call with undersigned counsel alerting him to the previous 3 calls.

42. On March 21, 2012, at 9:45am, a representative of Defendant named Paul contacted Plaintiff

43. Plaintiff informed Paul that he would soon be filing suit against Defendant and that they needed to stop calling him.

44. In response, Defendant's representative Paul told Plaintiff to "Go f**k yourself".

45. About 20 minutes later, at 10:09am, Herrera contacted Plaintiff regarding the Conoway debt.

46. Just as with Paul, Plaintiff informed Herrera that he was filing suit against Defendant.

47. Herrera indifferently retorted that this was Plaintiff's problem and none of his concern.

48. After this call ended, Defendant then called Plaintiff 3 more times within the span of the next minute.

49. On or about March 24, 2012 at 1:06pm, an unnamed representative of Defendant contacted Plaintiff stating, "So I hear we're not supposed to contact you – well I just wanted to give you a daily follow up".

50. Plaintiff demanded the name of this caller but he just hung up.

## COUNT I. VIOLATIONS OF THE MARYLAND CONSUMER DEBT COLLECTION ACT
## MD. COMM. LAW §§ 14-201-14-204

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. Maryland's Consumer Debt Collection Act, Md. Code Ann., Comm. Law §§ 14-201 et seq. ("MCDCA"), states that a "collector" while collecting or attempting to collect a debt may not communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor. 14-202(6).

53. Defendant's abusive autodialing caused Plaintiff's to ring incessantly and outside the presumed reasonable hours of 8:00am to 9:00pm.

54. Maryland's Consumer Debt Collection Act, Md. Code Ann., Comm. Law §§ 14-201 et seq. ("MCDCA"), states that a "collector" while collecting or attempting to collect a debt may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist. § 14-202(8).

55. Here, Defendant's representatives threatened a lawsuit against Plaintiff to collect on a debt that was owed by Conoway he did not personally guarantee.

56. As a "collector" and "person" under the MCDCA, § 14-201(b) and (d), Defendant and its employees are prohibited from performing or failing to perform any action described above and from abusing or harassing Plaintiff while collecting or attempting to collect an alleged debt.

57. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the MCDCA, including but not limited to each of the above-cited provisions of the MCDCA, § 14-202.

58. As a result of Defendant's harassing and abusive debt collection practices in violation of the MCDCA, Defendant has caused Plaintiff actual damages in the form of expenses in attempting to correct Defendant's misguided and illegal collection activities, severe emotional distress and mental anguish and embarrassment, including but not limited to severe stress, many sleepless nights, a feeling of hopelessness and headaches.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

a) For an award of actual damages pursuant to Md. Comm. Law § 14-203 against each Defendant and for Plaintiffs;

b) For an award of reasonable attorney's fees and costs; and

c) For such other and further relief as this Court deems just and proper.

## COUNT II. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227

59. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60. The Defendant is in willful violation of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.

61. Pursuant to 47 U.S.C. § 227(b)(1)(A)(iii), it is unlawful for any person "to make any call using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a …cellular telephone service….".

62. Defendant willfully violated the Act by placing <u>at least</u> 37 calls to Plaintiff's cell phone number without his prior consent.

63. The actions and conduct of the Defendant were and are in willful violation of 47 U.S.C. § 227 et seq., and Defendant is liable for damages in the amount of $500.00 for each violation,

64. As Defendant continued to use its automatic telephone dialing system to contact Plaintiff even after its representative assured undersigned counsel that such calls would cease, Defendant should

be held to have willfully and knowingly violated the FTCPA, such that damages may be increased to an amount equal to not more than three times the amount awarded, plus legal fees and expenses.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

a) For an award of actual damages of $500.00 per violation pursuant to 47 U.S.C. § 227(b)(3)(B), or $1500.00 against Defendant and for Plaintiff; or an award of actual damages of $1500.00 per violation if this Court finds that Defendant's violations were willful or knowing; and

b) For an award of reasonable attorney's fees and costs; and

c) For such other and further relief as this Court deems just and proper.

## COUNT III. VIOLATIONS OF THE MARYLAND TELEPHONE CONSUMER PROTECTION ACT MD. COMM. LAW §§ 14-3201-14-3202

65. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66. By virtue of Defendant's willful violation of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq, it is also in violation of the Maryland Telephone Consumer Protection Act, which adopts the federal statute.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

a) For an award of actual damages of $500 per violation pursuant to MD. Comm. Law § 14-3202(b)(2); and

b) For an award of reasonable attorney's fees and costs pursuant to MD. Comm. Law § 14-3202(b)(1); and

c) For such other and further relief as this Court deems just and proper.

## COUNT IV. VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT MD. COMM. LAW §§ 13-301 et. seq.

67. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

68. The foregoing acts of Defendant and its employees constitute an unfair and deceptive act as made applicable by §§ 13-301(14)(iii) and 13-301(14)(xx).

69. As a result of each and every Defendant's violations of the MCDCA, Plaintiff is entitled to actual damages and attorney's fees pursuant to § 13-408 from Defendant.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

a)   For an award of actual damages pursuant to Md. Comm. Law § 13-408(a) against Defendant and for Plaintiff;

b)   For an award of costs of litigation and reasonable attorney's fees pursuant to Md. Comm. Law § 13-408(b) against each Defendant and for Plaintiffs; and

c)   For such other and further relief as this Court deems just and proper

### COUNT V. INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

70.   Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

71.   Defendant and its employees intentionally interfered with the solitude, seclusion and or private concerns or affairs of Plaintiff, namely, by repeatedly and unlawfully harassing Plaintiff even though he was not obligated on the loan and he had repeatedly told them to stop contacting him.

72.   Defendant and its employees intentionally caused emotional harm to Plaintiffs by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiffs' rights to privacy.

73.   Plaintiff had a reasonable expectation of privacy in his solitude, seclusion, private concerns or affairs, and private financial information.

74.   The conduct of this Defendant and its employees, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by this Defendant which occurred in a way that would be highly offensive to a reasonable person in that position.

75.   As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages and punitive damages in an amount to be determined at trial from each and every Defendant.

**WHEREFORE**, Plaintiff prays that judgment be entered against each Defendant:

a)   For an award of actual damages from Defendant for the emotional distress suffered by Plaintiff as a result of the intentional invasions of privacy in an amount to be determined at trial;

b)   For an award of punitive damages from Defendant and for Plaintiff;

c)   For an award of reasonable attorney's fees and costs; and

d)   For such other and further relief as this Court deems just and proper..

### JURY DEMAND

76.   Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable. US Const. amend. 7.  Fed.R.Civ.P. 38.

Respectfully submitted this 26th day of March, 2012

BRIAN MILLER


By:
**/s/ Robinson S. Rowe**
Robinson S. Rowe, Bar No. 27752
Rowe Barnett, PLLC
5906 Hubbard Dr., Suite 4-A
Rockville, MD 20852
TEL: 301-770-4710 / FAX: 301-770-4711
interoffice@rowepllc.com